IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Gregory R. Downey, | ) | No. CIV 04-47-TUC-CKJ |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| General Mills, Inc., | ) | |
| Defendant. | ) | |

Pending before the Court is Defendant's, General Mills, Inc. ("General Mills"), Motion for Summary Judgment. For the reasons stated below, the motion is denied.

# I. STANDARD OF REVIEW

### 1. Summary Judgment

Summary judgment is appropriate where "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* Thus, the "mere scintilla of evidence" in support of the nonmoving party's claim is insufficient to defeat summary judgment. *Id.* at 252. However, in evaluating a motion for

summary judgment, "the evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). Further, a court "[must] not weigh the evidence[, make credibility determinations,] or determine the truth of the matter" at the summary judgment stage, but may only determine whether there is a genuine issue for trial. *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 410 (9th Cir.1996); *Balint v. Carson City, Nevada*, 180 F.3d 1047, 1054 (9th Cir. 1999); *see also Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1328 (9th Cir. 2000) (recognizing that on a motion for summary judgment, "a district court is entitled neither to assess the weight of the conflicting evidence nor to make credibility determinations")

**2. Intentional Disparate Treatment and Summary Judgment Analysis**

Specifically, in cases where the plaintiff alleges intentional discrimination pursuant to Title VII and similar statutes, summary judgment is often inappropriate as the "<u>crux of disparate treatment claims is the elusive factual question of intentional discrimination . . . Therefore, because of the inherently factual nature of the inquiry, the plaintiff need produce very little evidence of discriminatory motive to raise a genuine issue of fact</u>." *Mustafa v. Clark County School Dist.*, 157 F.3d 1169, 1180 (9th Cir. 1998)(internal quotes and citations omitted); *see also Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002)(in disparate treatment cases, "<u>any indication of discriminatory motive . . . may suffice to raise a question that can only be resolved by a factfinder, and for that reason summary judgment for the defendant will ordinarily not be appropriate</u> on any ground relating to the merits because the crux of a Title VII dispute is the elusive factual question of intentional discrimination.")(internal quotes and citations omitted)(emphasis added).

**II. DISCUSSION**

**A. Title VII and ADA Retaliation Claims (Counts 1 and 3)**

On January 29, 2004, Plaintiff filed his Complaint in this case asking for relief on six Counts: (1) Title VII Retaliation; (2) Americans with Disabilities Act ("ADA") Discrimination; (3) ADA Retaliation; and (4) Disability discrimination under the Arizona

Civil Rights Act ("ACRA"); (5) ACRA Retaliation; and (6) Constructive Discharge. On July 1, 2004, Defendant filed a Motion for Summary Judgment on Count 6 and a Motion for Judgment on the Pleadings as to Counts 1, 3, and 5. On August 6, 2004, Plaintiff filed his opposition to these motions; Plaintiff submitted a responsive motion and a detailed statement of facts which attached numerous pieces of evidence which included approximately 36 exhibits. On August 30, 2004, Defendant filed its reply brief. The Court entertained oral arguments on these motions on November 10, 2004, and the Court's Order denying in part and granting in part these motions was filed on November 19, 2004. *See* Doc. #58. In that Order, the Court dismissed Counts 5 and 6, but denied Defendant's attempt to dismiss Counts 1 and 3.

In the course of declining to dismiss Counts 1 and 3, the Court considered the evidence submitted by Plaintiff contained in exhibits 1 through 36; as discussed in the Court's 11/19/04 Order, to "the extent that matters outside the pleadings are presented and not excluded by the Court, a motion for judgment on the pleadings is converted into a motion for summary judgment. FED.R.CIV.P. 12(c)." *See*, *e.g.*, 11/19/04 Order at 2, lines 18-20; Doc. #23, Plaintiff's 8/6/04 Responsive Brief at 9, lines 12-13("If the Court must consider any matters outside the pleadings (as it should here), the motion is decided like one for summary judgment. Rule 12(c)"); FED.R.CIV.P. 12(c)("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."); *Townsend v. Columbia Operations*, 667 F.2d 844, 849-850 (1982)(party represented by counsel was on notice that Court could treat motion to dismiss as a motion for summary judgment where outside matters were submitted and discussed at oral argument in relation to the motion); *Grove v. Mead School Dist. No. 354*, 753 F.2d 1528, 1533 (9th Cir. 1985)("Notice occurs when a party has reason to know that the court will consider matters outside the pleadings."). Taking Plaintiff's evidence as true and drawing all inferences in his favor as required at summary judgment, the Court found the following facts:

Plaintiff, Gregory R. Downey ("<u>Downey</u>"), began working for Defendant, General Mills, Inc. ("<u>General Mills</u>"), in 1988. By November of 2001, Downey was promoted to Retail Sales Supervisor, and was supervising approximately fifteen sales representatives by May of 2002. Soon after, Downey discovered that Dennis Gayman ("<u>Gayman</u>"), one of the sales representatives under his supervision, was earning twice as much as all of the other sales representatives under his supervision. Gayman is a Caucasian male; all of the other sales representatives in question were females, minorities, or both.

In August of 2002, Downey reported this situation to upper management. In November of 2002, in response to these issues raised by Downey, Jeanette Jedele ("<u>Jedele</u>"), the Human Resources Manager, e-mailed Downey's immediate supervisor, Jeff Millard ("<u>Millard</u>"). The e-mail essentially directed Millard to inform Downey that Gayman's previous position as a manager was eliminated, and therefore he retained his previous management salary as a sales representative which accounted for the pay disparity. Further, the e-mail stated that this message to Downey "should be a verbal message, not written." However, in an earlier e-mail to Downey, Gayman specifically stated that he asked to be removed from his previous management position and be reassigned to a sales representative position. Gayman's former supervisor, John King ("<u>King</u>"), also confirmed these facts.

During this time frame, in October of 2002, Downey began receiving criticism regarding his communication style from Pat Brennan ("<u>Brennan</u>"), the National Retail Organization Director, and Will O'Brien ("<u>O'Brien</u>"), the Assistant Human Resources Manager. In particular, Brennan criticized Downey's e-mail etiquette, noting that his use of bold and underlining in his e-mails was too extreme and condescending. As such, Brennan directed Millard to institute an "Action Plan" to correct Downey's communication style by making Downey attend e-mail etiquette classes and being assigned a mentor. Brennan stressed to Millard that the situation with Downey was "f****** serious," that Downey is "going to cause serious f****** problems," that Millard better "get [Downey's] ass in line," that he "doesn't care about [Downey] and that he would get rid of him if he had to." Brennan also stressed that Millard's name was in jeopardy because Downey's actions reflected poorly upon Millard.

Shortly before this Action Plan was instituted for Downey, an incident arose whereby Downey sought to reprimand Gayman for using profanity whereby he said that Millard was "f****** blind." However, O'Brien directed that the reprimand not be placed in Gayman's file because this type of language was common at the "Manager, Director, and VP levels" and he was concerned that General Mills "would be supporting standards that are not held or enforced with other employees . . ."

In November of 2002, both Brennan and Millard met with Downey to institute a second Action Plan to improve Downey's communication style. Brennan also addressed Gayman's pay disparity at the meeting; he explained that Gayman was demoted from management to a sales representative and that pursuant to existing policies Gayman retained his previous salary. However, Downey informed Brennan of his communications with Gayman and King which reflected that Gayman asked to be removed from his management position and be reassigned to a sales representative position. At this point, the meeting became heated, and Brennan stated to Downey that "you think you know it all" and that "you pissed me off."

Brennan and other upper management were displeased with Millard's handling of the situation with Downey. In December of 2002, Brennan gave Millard a poor performance appraisal (0.9 out of 1.5). Millard's previous performance appraisal was a 1.25 out of 1.5. By January of 2003, a plan was in place to fire Millard. In late February of 2003, Millard was informed that he would be terminated effective March 15, 2003. General Mills offered Millard severance only on the condition that he sign an agreement to "provide assistance to and cooperate with General Mills and its attorneys in connection with employment-related disputes . . . brought against [General Mills] by Gregory R. Downey." In March of 2003, Millard filed a Charge of

> Discrimination with the Arizona Civil Rights Division ("ACRD") claiming retaliation and stating that "Brennan wanted me to falsely give Downey a substandard evaluation to use as a pretext so they could terminate Downey . . . I believe that my termination was in retaliation for refusing to give Downey a substandard performance evaluation. As Downey's manager I viewed him as an excellent employee who believed that [General Mills] engaged in pay discrimination among his employees."
>
> In January of 2003, in the midst of these circumstances, Downey filed a Charge of Discrimination with the Arizona Civil Rights Division alleging discrimination and retaliation by General Mills in violation of both state and federal civil rights statutes. An amended Charge of Discrimination was filed in June of 2003. In July of 2003, Downey received a performance appraisal which contained negative evaluations which he believed to have no factual basis. General Mills' policies state that on "an annual basis employee salaries are reviewed and impacted through the merit review process." In August of 2003, Brennan sent a letter to Downey critiquing Downey's performance, behavior, and communication style.
>
> Shortly thereafter, Downey applied for a medical leave of absence due to anxiety and stress. Previously, the Department of Veterans Affairs determined that Downey suffers from a 50% disability from Post Traumatic Stress Disorder. On August 19, 2003, General Mills placed Downey on medical leave pursuant to its Short-Term Disability Plan whereby Downey continued to receive compensation equal to his base salary. Pursuant to the disability program, Downey's pay was reduced to 65% of his base salary on October 22, 2003; Downey remained on short-term disability until February 17, 2004 at which point his leave of absence continued under General Mills Long-Term Disability Plan. To this day, Downey receives long-term disability compensation from General Mills and continues to be covered by General Mills company-paid life insurance, which was the only company-paid benefits program in which Downey was previously enrolled. Lastly, Downey is free to return to work if his condition improves.

*See* 11/19/04 Order at 2-5.

In light of these facts, and the favorable standards favoring plaintiff in these types of cases, the Court declined to dismiss the Title VII and ADA retaliation claims. *See*, *e.g.*, *Stegall v. Citadell Broadcasting Co.,* 350 F.3d 1061, 1065-66 (9th Cir. 2004)(a prima facie case of retaliation is shown if plaintiff shows that: (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there was a causal link between his activity and the employment decision); *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000)(an action is "cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity [i.e., reporting violations of federal civil rights statutes]."). Thus, in the Court's 11/19/04 Order, the Court specifically stated: "In addition, as already discussed in the statement of facts, Downey has introduced numerous pieces of evidence supporting the fact that he may have received negative criticism and

1 reviews that were undeserved.[1]  As such, under both summary judgment standards and
2 FED.R.CIV.P. 12(c) standards, Downey's claims for retaliation pursuant to Title VII and the
3 ADA survive.  Thus, General Mills' motion to exclude these claims are denied." *See*
4 11/19/04 Order at 12; *see also* 11/19/04 Order at 2-6 and 10-12(discussion of facts derived
5 from evidence submitted by Plaintiff; discussion of retaliation law). Accordingly, contrary
6 to Defendant's assertions,[2] the Court previously found that Plaintiff's Title VII and ADA
7 retaliation claims were inappropriate for resolution on summary judgment, and therefore
8 must be resolved by a fact finder at trial.

9 Despite these previous rulings on Counts 1 and 3, Defendant's current motion seeks to
10 dismiss these two claims.  As such, the Court construes this motion as to these two claims
11 as a motion for reconsideration.  A denial of a motion for reconsideration, or a district court's
12 refusal to reconsider or to vacate summary judgment rulings is reviewed for an abuse of
13 discretion.  *See Minnesota Life Ins. Co. v. Ensleve*, 174 F.3d 977, 987 (9th Cir. 1999); *School*
14 *Dist. No. 1J, Multnomah County v. AcandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993).

---

[1] The Court also stated in footnote 3 that: "Downey has also argued that he has suffered adverse employment actions because he was subject to verbal abuse and accusations of wrongdoing for allowing minority employees to take off certain cultural holidays.  However, the Court need not address these arguments as the Court has already found that Downey has shown an adverse action due to undeserved criticism and reviews."  *See* 11/19/04 Order at 12.

[2] In its reply, Defendant argues that the "Court did *not* conclude that Plaintiff had, *in fact*, received negative criticism and reviews.  In essence, the Court determined that additional discovery should be completed."  *See* Defendant's Reply at 2, lines 2-5.  As discussed above, this was not the Court's conclusion.  The basis for Defendant's assertion is a quote from the 11/19/04 Order which stated Plaintiff "may have received negative criticism and reviews."  *See* 11/19/04 Order at 11-12; Defendant's Reply at 1, lines 23-25 (Defendant emphasized the word "may").  However, the use of the word "may" did not indicate more discovery was needed to determine if these claims should survive summary judgment, but simply reflected the fact that the nonmoving party's evidence is to be believed, all justifiable inferences are to be drawn in the nonmoving party's favor, that the Court must not weigh the evidence, make credibility determinations, or determine the truth of the matter at the summary judgment stage. *Anderson*, 477 U.S. at 255; *Abdul-Jabbar*, 85 F.3d at 410; *Balint*, 180 F.3d at 1054; *Self-Realization Fellowship Church*, 206 F.3d at 1328. Thus, as in every summary judgment ruling where summary judgment is denied, the Court does not make concrete factual conclusions, but simply discusses what the facts may be pursuant to these standards such that there is an issue of fact for trial.

1  "Reconsideration is appropriate if the district court (1) is presented with newly discovered
2  evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if
3  there is an intervening change in controlling law.  There may also be other, highly unusual,
4  circumstances warranting reconsideration."  *School Dist. No. 1J, Multnomah County*, 5 F.3d
5  at 1263.  A motion for reconsideration should not be used to ask a court to "rethink what the
6  court had already thought through-rightly or wrongly."  *Defenders of Wildlife v. Browner*,
7  909 F. Supp. 1342, 1351 (D. Ariz. 1995).  Arguments that a court was in error on the issues
8  it considered should be directed to the court of appeals.  *Refrigeration Sales Co. v. Mitchell-
9  Jackson, Inc.*, 605 F.Supp. 6, 7 (N.D.Ill. 1983).

10  In large part, the new motion rehashes the arguments Defendant made in its previous
11  motion seeking to dismiss Counts 1 and 3.  *See* Doc. #12, #31, #98, #110.  Further, to the
12  extent that Defendant now argues that there has been no showing of adverse action or
13  causation as its negative criticisms and comments, corrective plans, and other actions were
14  all legitimate and justified as Plaintiff had a history of poor communication problems, this
15  simply creates a question of fact for the jury as Plaintiff has already submitted admissible
16  evidence showing that he could have been retaliated against for protected actions.  For
17  example, as discussed in the Court's previous Order: "General Mills offered Millard
18  severance only on the condition that he sign an agreement to 'provide assistance to and
19  cooperate with General Mills and its attorneys in connection with employment-related
20  disputes . . . brought against [General Mills] by Gregory R. Downey.'  In March of 2003,
21  Millard filed a Charge of Discrimination with the Arizona Civil Rights Division ("ACRD")
22  claiming retaliation and stating that 'Brennan wanted me to falsely give Downey a
23  substandard evaluation to use as a pretext so they could terminate Downey . . . I believe that
24  my termination was in retaliation for refusing to give Downey a substandard performance
25  evaluation.  As Downey's manager I viewed him as an excellent employee who believed that
26  [General Mills] engaged in pay discrimination among his employees.'"  *See* 11/19/04 Order

at 4 (quoting from Ex. 26 and Ex. 28 of Plaintiff's 8/6/04 Opposition).[3]  In addition, to the extent that Defendant now argues that it can not be liable for ADA retaliation as it was never aware of Plaintiff's Post Traumatic Stress Disorder ("PTSD") prior to him going on disability, Plaintiff has again submitted admissible evidence that he informed General Mills' management (Millard and Jedele) that he was diagnosed with PTSD as early as February of 2002; this was prior to the adverse actions at issue. *See* Plaintiff's Ex. 8 (Downey Deposition at 18-35), Ex. A20 (Documents Sent to General Mills Pertaining to Plaintiff's Disability Discrimination); Ex. A63 (Documentation from PTSD Study); Plaintiff's Ex. 1[4] at 1-20

---

[3] In regards to the adverse action element, the Court notes that Defendant continuously argues that Plaintiff never received a negative performance review.  However, there is direct evidence from Plaintiff's direct supervisor (Millard) that he was directed by upper management to give Downey unwarranted coaching, criticisms, and reviews due to Plaintiff's complaints about discrimination. *See* Plaintiff's Ex. 1 at 1-20 (Millard Declaration).  Further, the Court also notes that Defendant continuously argues that Plaintiff did not receive a negative performance review from Jedelle as she gave him a 1.1 rating, which was consistent with Downey's previous evaluations, and self-evaluation.  Nevertheless, this does not change the fact that Jedelle stated in the same review that Plaintiff's ability in "energizing and developing people," and in "demonstrating integrity and character" were "NS" (not a strength).  *See id.*; Plaintiff's Ex. 53 (Performance Review).  Further, Jedele stated in that review that Plaintiff's "communication . . . organizing and communicating effectively" was "NI" (needs improvement).  *Id.*  Further, in relation to Plaintiff's character and integrity, Jedele discussed the "frustration expressed over communication gaps . . . [are] counterproductive . . ." *Id.*  In relation to communication, Jedele also stated that Plaintiff's "verbal tone . . . [was] negative and counterproductive . . .," and that Plaintiff needed to accept "feedback without defensiveness and . . . negative intent." *Id.*

[4] The Court notes that Defendant claims that facts stemming from Millard declaration must be excluded in large part because they are argument or inconsistent with deposition testimony. Defendant claims that it filed a Motion to Strike in Millard's case against General Mills (before Judge Earl H. Carroll in Phoenix), and that Judge Carroll failed to rule on the motion. *See Jeffrey Millard v. General Mills*, CV 03-1970-PHX-EHC.  As Plaintiff correctly points out, this claim is disingenuous.  When Judge Carroll denied General Mill's Motion for Summary Judgment in May 2005, the Motion to Strike was also pending before the Court.  Judge Carroll was obviously aware of that pending motion, cited to the key facts based on Millard's declaration, and therefore impliedly, if not expressly, rejected General Mills' Motion to Strike Millard's statements.  *See* Doc. #113, Plaintiff's Response to Motion to Strike, Ex. 1 (Judge Carroll's Order Denying General Mills' Motion for Summary Judgment.)  The Court does not find it appropriate to second guess Judge Carroll's rulings, and likewise also rejects Defendant's current motion to exclude Millard's statements submitted by Plaintiff in opposing summary judgment. Further, the Court notes that the Declaration is not a "sham affidavit." *See Leslie v.*

(Millard Declaration). Accordingly, in light of the foregoing, Defendant has failed to present a persuasive argument for the Court to reconsider its previous holding. As such, Defendant's Motion for Summary Judgment as to Counts 1 and 3 is denied.

**B.  Counts 2 and 4: Disability Discrimination Pursuant to the ADA and ACRA**

As a threshold matter, both parties recognize that the federal law governing disability discrimination under the ADA also reflects the law governing a disability discrimination claim under ACRA.[5]

In order to prove a prima facie case of unlawful disability discrimination, Plaintiff must show that (1) he was a disabled person within the meaning of the ADA, (2) he was a qualified individual with a disability, and (3) he suffered an adverse employment action because of his disability. *See* 42 U.S.C. § 12112(a) *and Kennedy v. Applause*, 90 F.3d 1477, 1481 (9th Cir.1996).

First, Plaintiff has introduced evidence creating an issue of fact as to whether he was disabled; he has introduced evidence from both University Medical Center ("UMC") and the Veteran's Administration ("VA") showing that Plaintiff had PTSD in at least 2001, and that the VA diagnosed him with a service related PTSD disability as of October 2002. *See* Doc. #24, Ex.35 to Plaintiff's Original Opposition (VA Rating Decision); Plaintiff's Ex. A63 (UMC Documents on PTSD Study); Ex. 8 (Downey Deposition at 18-35). Second, there is an issue of fact as to whether Plaintiff is "qualified" to perform the essential functions of the job as he was actually performing the job in question at General Mills, and overall received

---

*Grupo ICA*, 198 F.3d 1152, 1157-1158 (1999)(noting the difference between a "sham" declaration, and a declaration further elaborating, explaining or clarifying facts which is permissible); *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-267 (9th Cir. 1991)(same).

[5] Because there is limited Arizona case law regarding discrimination under ACRA and ACRA is modeled after federal discrimination statues, Arizona courts look to federal law analyzing discrimination claims as persuasive authority. *See Francini v. Phoenix Newspaper, Inc.*, 188 Ariz. 576, 582, 937 P.2d 1382, 1388 (Ct. App. 1996); *St. Lukes Health System v. State, Dept. of Law, Civil Rights Div.*, 180 Ariz. 373, 377 (Ct. App. 1994); *Najar v. State*, 198 Ariz. 345, 347, 9 P.2d 1084, 1086 (Ct. App. 2000).

at least satisfactory ratings during the relevant time period. *See* Plaintiff's Ex. 1 at 1-20 (Millard Declaration); Ex. 53 (Performance Review); 42 U.S.C. § 12111(8) (one is "qualified" if it is shown that he is an "individual with a disability who, with or without reasonable accommodation, [could] perform the essential functions of the employment position that such individual holds or desires."); 29 C.F.R. § 1630.2(m). Further, contrary to Defendant's assertion that it was totally unaware of Plaintiff's PTSD during the relevant time period (as already discussed above), Plaintiff has submitted evidence reflecting that he informed General Mills' management (Millard and Jedele) that he was diagnosed with PTSD as early as February of 2002. *See* Plaintiff's Ex. 8 (Downey Deposition at 18-35), Ex. A20 (Documents Sent to General Mills Pertaining to Plaintiff's Disability Discrimination); Ex. A63; Plaintiff's Ex. 1 at 1-(Millard Declaration). Finally, there is also an issue of fact as to whether Downey suffered an adverse employment action due to his disability. There is evidence that Downey and Gayman both asked for re-assignments to positions with lower pay scales, Downey's pay was lowered, Gayman's pay was not lowered, and Downey was disabled while Gayman was not disabled during the relevant time periods. *See* Ex. A44 (Gayman's email stating that he asked to be reassigned to a lower position); Ex. 2 at 14-21 (Gayman's Deposition); Ex. 2 at 18-19 (Gayman states that "I asked for a different job. I didn't care what it was. Matter of fact, you need to understand, at the point I was at, I'd have cleaned toilets. I'd have been a janitor. I did not want to be a customer account manager anymore. I didn't care what they were offering me. I was going to take a different job."); Ex. A7 (Email regarding Gayman's salary); Ex. A21 (Email regarding Gayman's salary); Ex. A1 (Gayman's Salary). To the extent Defendant argues that it was required to keep Gayman's base salary the same pursuant to the merger agreement with Pillsbury, this simply creates an issue of fact in light of the evidence introduced by Plaintiff. *See id.*; Defendant's Ex. B at 6 (Merger Agreement, Article VI).[6]

---

[6] The Court notes that Article VI states that the base salary of Pillsbury employees who remained employed by General Mills only had to be honored for one year from the date of the closing;

- 10 -

1    Lastly, Defendant argues that Plaintiff's disability discrimination claim is untimely as a
2 charge pertaining to this claim was not filed until 2003, but the claim arose in March of
3 2001when Plaintiff requested a transfer and received a pay cut.  However, as Plaintiff
4 correctly argues, the statute of limitations does not begin to run until he "knows or has reason
5 to know of the injury which is the basis of the action." *Norman v. Bloodshaw v. Lawrence*
6 *Laboratory*, 135 F.3d 1260, 1266-1267 (9th Cir. 1998); *see also* 42 U.S.C. §12117(a); 42
7 U.S.C. §2000e-5(e).  Thus, as Plaintiff did not learn of Gayman's salary until August of 2002,
8 and only learned that Gayman actually requested to be demoted to a lower paying position
9 in November of 2002, his claim did not accrue until after these dates.  *See* Plaintiff's Ex. 9,
10 Ex. 21.  Thus, Gayman's disability discrimination claims are timely.
11    In light of the foregoing, there are genuine issues of material fact precluding summary
12 judgment on Counts 2 and 4 of the Complaint.

22 **III. Conclusion**
23    Accordingly, IT IS HEREBY ORDERED as follows:
24 (1)  Defendant's Motion for Summary Judgment (Doc. #98) is **denied**;

---

thus, it appears that Gayman's salary had to be maintained only until November of 2002.  In addition, Article VI states: "Nothing in this Ageement shall require General Mills . . . to maintain the employment of any Employee."

- 11 -

(2) To the extent that Defendant's Motion to Strike (Doc. #112) seeks to exclude facts discussed in this Order, the motion is **denied**; the Court has determined that the evidence submitted by Plaintiff supporting those facts is sufficient and properly before the Court for its consideration.

DATED this 7th day of December, 2005.

_____
Cindy K. Jorgenson
United States District Judge